Madden, Judge,
delivered the opinion of the court:
The plaintiff on June 3, 1942, made a contract with the 'Government, represented by the Corps of Engineers, War Department, to do the concrete work for an assembly building at an aircraft assembly plant at Marietta, Georgia. The ’building covered an area of approximately 43 acres, and the contract in its final form called for the pouring of 82,135 cubic yards of concrete. This measurement was arrived :at simply by computing the spaces in the forms shown on *61 the drawings. The plaintiff was paid for that amount of concrete, at the specified price per cubic yard.
The plaintiff did not batch or mix its own concrete, but bought it from the Campbell Coal Company, which had a batching plant at the project. The Campbell Company delivered the concrete to the sites where the plaintiff placed it in drum type concrete mixing trucks. The plaintiff signed receipts for deliveries as they were made.
When the job was finished it appeared that the plaintiff' had paid the Campbell Company for 85,991.85 cubic yards of concrete. Thus there was a discrepancy of 3,856.85 cubic-yards. The plaintiff was willing to absorb one-half of that loss, as being accounted for by shrinkage in drying, wastage-of concrete which had been mixed too long before it was ready for placement and hence was rejected, replacement of defective concrete, concrete placed below the form lines, and perhaps other causes. But it placed responsibility upon the Government for the other one-half of the discrepancy, that is, for 1,928.42 cubic yards, at its cost price of $8.80 per cubic-yard.
The basis of the plaintiff’s claim is that the Government required the Campbell Coal Company to use a mixture of ingredients in its concrete, which mixture reduced the yield,, or cubic yardage below what it would have been if the mix which an expert employed by the Campbell Company had designed, and which was an adequate mix, had been continued.
Paragraph 4-13 of the specifications, quoted in Finding 4,, provided that the Government should make laboratory tests, of the strength of the concrete and should have the right to-order changes in the mix to bring the concrete up to strength.. Such tests were made, the concrete was found to be below the required strength, and changes in the mix were ordered. The specified proportions were, for the accommodation of the Campbell Coal Company and the plaintiff, stated in quantities which would theoretically produce four cubic-yards of concrete, the maximum capacity of the delivery trucks.
The plaintiff’s contention concerning the reduced yield-resulting from the changed mix is beyond our comprehension- *62 It would seem that a cubic yard of concrete is the amount of concrete that will fill a cubic yard of space, regardless of whether the ingredients in the mixture are more, or less, of ■cement, sand, and gravel. One mix may make weak concrete .and another, strong concrete, but no mix will make a yard unless the product fills a yard of space. If, then, the plaintiff did not succeed in filling the yardage in the forms with the yardage which it receipted and paid for to the Campbell ■Coal Company, it was either because the capacity of the forms was measured or computed incorrectly, or because the ■Campbell Company did not deliver the number of yards which it charged for. The plaintiff does not contend that the forms were not measured correctly, or that their capacity was not computed correctly. The alternative, then, must have occurred. It may have occurred because the Campbell •Company and the plaintiff relied implicitly upon the fact that the theoretical yield of the Government’s specified mix, in the quantities stated in the Government’s design, was four cubic yards per batch. But those quantities were used merely for the accommodation of the Campbell Company and the plaintiff, were as accurate as any such theoretical computation could be made, and certainly did not amount to a warranty by the Government that the plaintiff would find no discrepancy between theoretical yield and actual yield when applied to some 80,000 cubic yards of concrete.
The plaintiff’s mistake was in agreeing to pay the Campbell Company for concrete on a basis different from that on which it was itself to be paid by the Government. Since it was impossible for it to know, when it receipted for a ■truckload of concrete, whether it got what the receipt called for, it was inevitable that there should be a discrepancy in ■one direction or the other. And to suppose that it would have come out better, if it had continued to use the mix ■•designed by its own expert, would be pure surmise. That possibility was never put to the test. There was not even -any theoretical evidence that that kind of a mix normally ■produces a greater yield of concrete than the one designed by the Government. So that if different mixes can, somehow beyond our understanding, produce greater or lesser yields, *63 it is just as possible that the plaintiff’s own mix would have created a greater, as that it would have created a smaller, discrepancy.
The plaintiff’s petition will be dismissed.
It is so ordered.
Howell, Judge; Whitaker, Judge; Littleton, Judge; and Jones, Chief Judge, concur.